IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JOE T. YOUNG,

    Plaintiff,

v.

ANTHONY SMITH; and CITY OF BRUNSWICK,

    Defendants.

CIVIL ACTION NO.: 2:14-cv-109

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Joe Young filed this pro se action pursuant to 42 U.S.C. § 1983 after officers of the City of Brunswick Police Department approached Plaintiff on the street, requested to speak with him, and asked Plaintiff questions concerning his identity. Plaintiff initially filed this action in the Glynn County Superior Court, and Defendants Anthony Smith and the City of Brunswick ("Defendants"), the only Defendants named by Plaintiff, filed a Notice of Removal in this Court. (Doc. 1.) After filing a Motion to Remand, (doc. 9), and two Motions for Recusal, (docs. 13, 18)[1], Plaintiff filed a Motion for Summary Judgment, (doc. 22). Defendants also filed a Motion for Summary Judgment, (doc. 24), and a Response in Opposition to Plaintiff's Motion for Summary Judgment, (doc. 29). Plaintiff then filed a Brief in Opposition to Defendants' Motion for Summary Judgment, (doc. 32), followed by two Motions in Limine, (docs. 34, 35). Defendants filed a Response in Opposition to Plaintiff's Motions in Limine. (Doc. 36.)

For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendants' Motion for Summary Judgment. I also **RECOMMEND** the Court **DENY** Plaintiff's Motion for

---

[1] The Court denied Plaintiff's Motion to Remand and Motions for Recusal on March 31, 2015. (Doc. 31.)

Summary Judgment, **DISMISS** Plaintiff's Complaint, **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal. Plaintiff's Motions in Limine, (docs. 34, 35), are **DENIED**. In addition, Plaintiff has filed a motion labeled as a "Dative Motion," (doc. 37), which appears to be a Motion for Case Status. That Motion is **DISMISSED AS MOOT**.

## BACKGROUND

Plaintiff asserts that he was accosted by Defendant Smith while walking along Homer L. Wilson Way in Brunswick, Georgia, on April 4, 2014. (Doc. 1, p. 4.) Earlier that day, Defendant Smith received a call from the Brunswick Police Department informing him that a concerned citizen had reported a "suspicious person" who appeared to be "act[ing] as a lookout" on Homer Wilson Way. (Doc. 24-1, p. 2; Doc. 24-2, p. 1.) As Defendant Smith drove along Homer L. Wilson Way, he noticed an abandoned bicycle next to a clump of bushes and a "white male with no shirt, dirty khaki shorts, a bluish baseball cap, and tennis shoes" walking fifty yards ahead of the bicycle. (Doc. 24-1, p. 2.) According to Plaintiff, Defendant Smith then "pulled up behind the Plaintiff in his car and told [him] to stop and was very hostile."[2] (Doc. 1, p. 4.)

Defendant Smith then attempted to conduct a "field interview."[3] (Doc. 24-3, pp. 5–6.) Plaintiff, angry that Defendant Smith tried to speak to him, refused to provide his identification card and asked why the police were harassing him. (Doc. 25, p. 18; Doc. 24-1, p. 3.) According to Plaintiff, he "protested the interrogation and prefer[r]ed to terminate it[.]" (Doc. 32-3, p. 2.) Shortly thereafter, two other officers arrived on the scene. (Doc. 24-3, p. 5.) After these officers' arrival and throughout the encounter, Plaintiff "continued to protest . . . and [tried] to

---

[2] Defendant Smith does not deny that he approached Plaintiff, but maintains that he did so calmly and requested to speak with Plaintiff. (Doc. 24-1, p. 2.)

[3] Field interviews are a "means for [an] officer to make personal contacts with citizens, identify individuals as possible subjects and gather information" followed by the completion of a "field contact card" in which the officer records the information he gathered from the contact. (Doc. 22-3, p. 1.)

terminate the confrontation[.]" (Doc. 32-3, p. 2.) Eventually, another officer briefly handcuffed Plaintiff.[4] (Doc. 29, p 1.) After Plaintiff produced his identification card, Defendant Smith ran a warrant check and completed a field interview card. (Doc. 24-3, pp. 5–6.) The officers then removed Plaintiff's handcuffs, and he continued walking down the road. (Id. at p. 8.)

## DISCUSSION

Plaintiff asserts that Defendant Smith seized him in violation of the Fourth Amendment during the field interview conducted on April 4, 2014. (Doc. 1, p. 6.) Plaintiff further asserts that the Brunswick Police Department's Field Interview and Contact Card Policy—which authorized Defendant Smith to approach and speak with Plaintiff—is unconstitutional. (Doc. 32, p. 5.) In moving for summary judgment, Plaintiff initially failed to submit a statement of material facts or allege any material facts. In response to Defendants' Motion for Summary Judgment, however, Plaintiff filed a Response to Defendants' Statement of Undisputed Material Facts in which he sets forth his material allegations. (Doc. 32-3.) In their Motion for Summary Judgment, Defendants assert they are entitled to summary judgment because Plaintiff cannot sustain his Fourth Amendment claims against them.

Plaintiff also filed two Motions in Limine that could, conceivably, impact the Court's ruling on summary judgment. (Docs. 34, 35.) Accordingly, the Court addresses those Motions before turning to the parties' Motions for Summary Judgment.

---

[4] The parties dispute the nature of Plaintiff's behavior leading up to the handcuffing. Plaintiff maintains that he "didn't move a muscle" and that the police then handcuffed him in order to coerce Plaintiff into providing his identification. (Doc. 25, p. 30.) Defendant Smith and the two other officers present at the scene maintain that Plaintiff was placed in handcuffs for the officers' safety after Plaintiff became belligerent and aggressively took a step toward Defendant Smith. (Doc. 29, p. 1; Doc. 24-3, pp. 5–9.) The parties' dispute of this fact is immaterial as Defendant Smith, the named defendant, did not touch Plaintiff.

**I.     Motions in Limine (Docs. 34, 35)**

In his first Motion in Limine, (doc. 34), Plaintiff contends that incident reports compiled by Defendant Smith and the two officers who assisted him during the field interview should be excluded. (Doc. 34, pp. 1–3.) Plaintiff contends that the reports contain false information concocted in anticipation of litigation and, therefore, are inadmissible.

Plaintiff's Motion implicates the business records exception to the hearsay rule which provides:

> A record of an act, event, condition, opinion, or diagnosis [is admissible] if:
>
> > (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> >
> > (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> >
> > (C) making the record was a regular practice of that activity;
> >
> > (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> >
> > (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). In order to be admissible under this exception, a "police report need only have been made in the regular course of business and the person offering the report [must] be in a position to attest to its authenticity." United States v. Barrentine, 591 F.2d 1069, 1082 (5th Cir. 1979).

Here, each of the incident reports was made near the time of the field interview by officers with personal knowledge of the incident. Further, "[i]t is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted" under the business records exception to the hearsay rule. United Tech. Corp. v.

Mazer, 556 F.3d 1260, 1278 (11th Cir. 2009) (quoting United States v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983)). Though Plaintiff alleges that the incident reports are untrustworthy because they were created in anticipation of litigation, Plaintiff also admits that he called the police department to announce his intention to file a lawsuit "immediately after the incident[.]" (Doc. 34, pp. 1–2.) As the officers clearly could not draft and file the incident reports before Plaintiff "immediately" called the police department, his argument is unavailing. Because Plaintiff otherwise offers only conclusory allegations that the statements contained within the incident reports are false, Plaintiff has not shown that the information contained in or the method or circumstances of preparation of the incident reports indicate a lack of trustworthiness.[5] Provided the witness offering the police report at trial can properly attest to its authenticity, the police report will fall within the business records exception to the hearsay rule. Plaintiff's first Motion in Limine is, therefore, **DENIED**.

In his second Motion in Limine, Plaintiff appears to argue, without explanation, that all evidence submitted by Defendants in this litigation is inadmissible. (Doc. 35.) As Plaintiff has failed to challenge any particular evidence in his second Motion in Limine, the Court will construe this document as a Reply Brief to Defendants' Motion for Summary Judgment. Accordingly, the Court will consider the arguments made in Plaintiff's second Motion in Limine in conjunction with his other pleadings. However, to the extent this pleading can be considered a Motion, that Motion is **DENIED**.

---

[5] In his Motion in Limine, Plaintiff states that "these reports were a cover up and [show] a consciousness of guilt" and alleges that the reports are a "contexture of lies" and that "these structures of lies are not admissible." (Doc. 34, pp. 2–3.) These statements are conclusory and do not establish a lack of trustworthiness.

## II. Summary Judgment Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

Because both parties have moved for summary judgment, the Court will determine whether either of the parties is entitled to summary judgment based upon the facts that are not genuinely disputed. See United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.") (quoting Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975)).

### III. Plaintiff's Fourth Amendment Claim—False Arrest

Plaintiff asserts that Defendant Smith unlawfully seized him in violation of the Fourth Amendment by stopping him on Homer Wilson Way, questioning him without reason, and by allowing another officer to place Plaintiff in handcuffs after he refused to provide his identification. (Doc. 1, p. 4.) Defendants first argue that Defendant Smith's interaction with Plaintiff was reasonable and does not implicate the Fourth Amendment. (Doc. 24-2, p. 5.) In the alternative, Defendants aver that Defendant Smith's actions qualify as a permissible investigatory stop. (Id.) Defendants finally argue that Plaintiff's brief handcuffing did not violate the Fourth Amendment because, after Plaintiff became belligerent, officers had probable cause to arrest him for obstruction of justice. (Id. at pp. 5–6.)

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend [even] to brief investigatory stops of persons . . . that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). However, "[i]f a reasonable person would feel free to terminate the encounter, then he . . . has not been seized." United States v. Mitchell, 407 F. App'x 407, 409 (11th Cir. 2011). Relevant factors to this inquiry include, "among other things: whether the police officer blocked the individual's path,

the display of weapons, whether identification is retained, the individual's age and intelligence, the number of police officers present, any physical touching of the suspect, and the language and tone of voice of the police." Id. "A Fourth Amendment seizure occurs only when, by means of physical force or a show of authority, a person's freedom of movement is restrained." Id. (internal citation and punctuation omitted).

However, "[in] the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. Hiibel v. Sixth Jud. Dist. Ct. of Nev., 542 U.S. 177, 185 (2004). Furthermore, "'[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.'" Id. at 186 (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)).

The undisputed facts reveal that Defendant Smith's request to speak with Plaintiff and his request that Plaintiff present his identification were reasonable in light of the facts known to the officer at the time. Defendant Smith received a report of a suspicious person on Homer Wilson Way on April 4, 2014. (Doc. 24-1, p. 2.) While driving down Homer Wilson Way, Defendant Smith saw Plaintiff, shirtless, walking near a bicycle that appeared to have been stashed in a clump of bushes. (Id.) Defendant Smith pulled his car over, approached Plaintiff, and indicated that he wished to speak with him.[6] (Id.) Plaintiff, angry that Defendant Smith had attempted to speak with him, resisted the conversation and tried to terminate it several times. (Doc. 25, p. 18; Doc. 32-3, p. 2.) Defendant Smith eventually asked for and received Plaintiff's identification. (Doc. 24-1, p. 3.) After Defendant Smith conducted a warrant check, he returned the identification, and Plaintiff continued walking down the road. (Doc. 24-3, pp. 5–6.)

---

[6] Defendant Smith maintains that he calmly asked Plaintiff if he could speak with him, while Plaintiff maintains that Defendant Smith furiously ordered him to stop and forced Plaintiff to speak with him. (Doc. 24-3, p. 5; Doc. 32, p. 4.)

These facts do not indicate that Defendant Smith "seized" Plaintiff. Plaintiff is an adult of at least average intelligence, as he has drafted several briefs and timely submitted them to this Court. There is no evidence that Defendant Smith touched Plaintiff in any way during this encounter.[7] Further, there is no evidence that Defendant Smith blocked Plaintiff's path or displayed his weapons to Plaintiff. While Defendant Smith did eventually retain Plaintiff's identification after two other officers approached the scene, this evidence alone does not indicate that Defendant Smith coerced Plaintiff into cooperation. Further, although Plaintiff disputes whether Defendant Smith merely "asked" to speak with him, contending instead that Defendant Smith "furiously" and "tyrannically" ordered Plaintiff to stop, (doc. 32-3, p. 2), a policeman may stop a suspicious individual to determine his identity "without implicating the Fourth Amendment." Hiibel, 542 U.S. at 185–86. Accordingly, Plaintiff's dispute of this fact is immaterial for purposes of summary judgment, and Defendant Smith is entitled to judgment as a matter of law, based upon the undisputed facts recited above.

The Court notes that another individual, Officer N. Lawson, also reported to the scene and eventually handcuffed Plaintiff.[8] (Doc. 24-3, p. 9.) However, because Defendant Smith did not handcuff Plaintiff and Officer N. Lawson is not a party to this lawsuit, it is unnecessary to address the remaining grounds of Defendant's Motion for Summary Judgment. Accordingly, the Court should **GRANT** this portion of Defendants' Motion for Summary Judgment and **DISMISS** Plaintiff's Fourth Amendment claim.

---

[7] Though Plaintiff and Defendants admit that Plaintiff was eventually handcuffed by another officer, that contact is immaterial to Plaintiff's claim against Defendant Smith.

[8] The Court also notes that Plaintiff avers that Defendant Smith was "was in charge" and "directed" Officer N. Lawson to handcuff Plaintiff. (Doc. 32-3, p. 3.) However, Plaintiff has presented no facts indicating that Officer N. Lawson was subject to the authority of Defendant Smith.

**IV. Municipal Liability**

Next, Plaintiff asserts that the Brunswick Police Department's Field Interview and Contact Card policy is unconstitutional because it permits police officers to "subjectively arrest an American at any time. . . for no discern[i]ble reason." (Doc. 32, p. 6.) Defendant asserts that Plaintiff has failed to show that the policy is unconstitutional. (Doc. 24-2, p. 10.)

To impose Section 1983 liability on a municipal entity, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d 1340, 1349 (11th Cir. 2011) (quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)). A policy is a "decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005) (citing Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997)). A custom "is a practice that is so settled and permanent that it takes on the force of law." Id. at 1221 (citing Sewell, 117 F.3d at 489). A custom must be so "longstanding and widespread . . . that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (citation and alterations omitted). This requirement "prevents the imposition of liability based upon an isolated incident" and "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. (internal citations and punctuation omitted).

Here, Plaintiff does not aver that the Brunswick Police Department has a widespread custom or practice under which police officers subject citizens to unconstitutional arrests. Rather, Plaintiff argues that the Brunswick Police Department's Field Interview and Contact Card policy is unconstitutional on its face. In support of his argument, Plaintiff advances the following in his Statement of Material Facts: (1) "The City's field contact interview policy allows officers to accost citizens and interrogate them for information without any reasonable or objective suspicion"; (2) "The policy is arbitrary and capricious and has no standards[,] and individuals may be accosted and . . . questioned . . . on an officer[']s whim"; and (3) "Due process of law and the [F]ourth Amendment prohibit the execution of this policy for unreasonableness and it is unconstitutional." (Doc. 22-1.) Plaintiff's statements are legal conclusions and fail to state any supporting material facts. Plaintiff attempts to make a leap from his isolated incident on April 4, 2014 to an overall municipal policy without any factual support. Therefore, the Court should **GRANT** this portion of Defendant's Motion for Summary Judgment and **DISMISS** Plaintiff's Municipal Liability claim.

## V. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[9] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . . may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is

---

[9] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

11

filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion for Summary Judgment, the Court should **DENY** Plaintiff's potential *in forma pauperis* status on appeal, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Court **GRANT** Defendant's Motion for Summary Judgment, (doc. 24), and **DENY** Plaintiff's Motion for Summary Judgment. (Doc. 22.) I also **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint and **CLOSE** this case. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*. Plaintiff's Motions in Limine, (docs. 34, 35), are **DENIED**.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 2nd day of February, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA