# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

```
JOE T. YOUNG,                  *
                               *
     Plaintiff,                *
                               *
v.                             *      CV 214-109
                               *
ANTHONY SMITH and CITY OF      *
BRUNSWICK,                     *
                               *
     Defendants.               *
```

### SUPPLEMENTAL ORDER

The Court enters this Order as a supplement to its March 29, 2016, Order on Plaintiff's Objections to the Magistrate Judge's Report and Recommendation. Dkt. No. 41. In that Order, the Court (1) overruled Plaintiff Joe T. Young's ("Plaintiff") Objections to the Report and Recommendation (dkt. no. 40); (2) adopted the Report and Recommendation as the opinion of the Court (dkt. 39); (3) dismissed Plaintiff's Complaint in its entirety (dkt. no. 1); and (4) denied Plaintiff leave to appeal in forma pauperis. Id. at p. 7. The Court does not depart from the rulings in that Order. However, in an effort to more fully address Plaintiff's Objections, the Court does **SUPPLEMENT** its previous Order (dkt. no. 41) and **MODIFY** the Magistrate Judge's Report and Recommendation (dkt. no. 39) as set forth herein.

AO 72A
(Rev. 8/82)

## BACKGROUND

As the Report and Recommendation and the previous Order describe in detail the events underlying Plaintiff's claims, the Court need not repeat those facts in this Order. Nevertheless, the Court notes certain additional facts not included in those opinions that are relevant to the supplemental analysis here.

Specifically, the Court adds that on the day of the alleged incident, Smith was serving as Shift Commander of the Brunswick Police Department. Dkt. No. 32, Ex. A, ¶ 1. Smith maintains that "[a]t the time [that he] initially encountered . . . [P]laintiff, [he] did not suspect . . . [P]laintiff of a crime." Id. at Ex. A, ¶ 13. Rather, according to Smith, he approached Plaintiff to "engage[] in a consensual field contact interview in connection with [his] investigation into a report of a suspicious older white male hiding in the bushes in an area known for criminal activity." Id. at Ex. A, ¶ 15. The parties do not dispute that after Plaintiff handed Smith his identification card, "Smith advised him that he was going to check on his status, and if everything was all right he could leave. After the interview was completed, [Plaintiff] was allowed to leave." Dkt. No. 24-1, ¶ 17; Dkt. No. 32-3, ¶ 17.[1]

---

[1] Plaintiff asserts that Smith threatened to take him to jail if he did not show his identification card. Dkt. No. 32-3, ¶¶ 15, 17; see also Dkt. No. 25, 27:21-23.

2

The Court further notes that Plaintiff alleges in his Complaint that, in addition to the incident at issue, he "has had three incidents before this when [his] liberty was taken by the Brunswick police but [he was] not handcuffed." Dkt. No. 1, Ex. A, ¶ 3. Plaintiff expounded upon this averment in his deposition, where he detailed one instance in which a police officer confronted him about wearing a small bathing suit in public and asked for his identification but did not handcuff him at any time. Dkt. No. 25, 35:8-36:1. Plaintiff's Complaint brings constitutional claims against Defendants pursuant to 42 U.S.C. § 1983 ("Section 1983") and alleges not only an unlawful seizure under the Fourth Amendment, as analyzed in the Report and Recommendation and previous Order, but also a Fifth Amendment due process violation. Dkt. No. 1, Ex. A, ¶ 1. Plaintiff names Smith as a Defendant only in his individual capacity and seeks money damages from both Defendants. Id. at Ex. A, p. 1 & ¶ 4.

In his Report and Recommendation, the Magistrate Judge recommended, in part, that the Court grant summary judgment in favor of Smith on Plaintiff's Fourth Amendment claim. Dkt. No. 39, pp. 7-9. The Magistrate Judge reasoned that Smith's requests to speak with Plaintiff and to see his identification card were reasonable under the circumstances and, in any event, did not amount to a "seizure." Id. at pp. 8-9. The Report and

Recommendation notes that another officer, Officer N. Lawson ("Lawson"), reported to the scene and handcuffed Plaintiff at one point, but deems this fact immaterial "because . . . Smith did not handcuff Plaintiff and . . . Lawson is not a party to this lawsuit." Id. at p. 9. Additionally, the Magistrate Judge recommended that the Court find in favor of the City of Brunswick on all claims, because nothing suggests that the Brunswick Police Department has a widespread custom or practice pursuant to which its officers carry out unconstitutional arrests. Id. at pp. 10-11. The Report and Recommendation explains, "Plaintiff attempts to make a leap from his isolated incident on April 4, 2014[,] to an overall municipal policy without any factual support." Id. at p. 11.

On February 22, 2016, Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation. Dkt. No. 40. Plaintiff argues that the Magistrate Judge "has not specified where his license comes from to issue an order and recommendation in this matter," id. at p. 1; the Court addressed this Objection in its previous Order, dkt. no. 41, p. 7 n.2. However, Plaintiff also challenges the Magistrate Judge's Report and Recommendation on the basis that his findings regarding Smith are illogical given Smith's representation that he did not suspect Plaintiff of any crime when he first interacted with him. Dkt. No. 40, p. 2. Plaintiff also contends that Smith

4

"admits to being the [S]hift [C]ommander at that time and in charge of the other officers[,] including the one that handcuffed Plaintiff." Id. As to the City of Brunswick, Plaintiff asserts that the Magistrate Judge erroneously categorized the complained of conduct as an "isolated incident," as Plaintiff's Complaint "avers 4 incidents" bearing on the constitutionality of the municipality's policies. Id. at p. 3.

## LEGAL STANDARDS

A magistrate judge may submit proposed findings of fact and recommendations for the court's ruling on a summary-judgment or other dispositive motion. 28 U.S.C. § 636(b)(1)(B). Upon the objection of a party, a district judge must review the matter de novo. Id. § 636(b)(1). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see also Fed. R. Civ. P. 72(b)(3).

In reviewing a motion for summary judgment, the court must decide whether the movant meets his burden of showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

5

(1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at

6

332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**DISCUSSION**

As the Court determined in its Order adopting the Magistrate Judge's Report and Recommendation, the Magistrate Judge correctly stated the law applicable to Plaintiff's claims and, for the most part, properly applied the law to the evidence in this case. The Court need not restate that analysis at length in this Order. However, the Court does address certain points of departure from the Magistrate Judge's findings, as well as the arguments raised in Plaintiff's Objections, that were not fully covered in the Order dated March 29, 2016.

**I. Plaintiff's Claims Against Smith**

Defendants raise qualified immunity as a defense to Plaintiff's Section 1983 claims against Smith in his individual capacity for alleged violations of the Fourth and Fifth Amendments. Dkt. No. 24-2, pp. 8-10. To the extent that the

7

Magistrate Judge's Report and Recommendation explores only a possible Fourth Amendment violation on the part of Smith, see dkt. no. 39, pp. 7-9, that discussion, as supplemented below, finds its place in the broader context of a qualified-immunity analysis.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007) (quoting Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003)). A government official who raises qualified immunity as an affirmative defense "must initially establish that he was acting within his discretionary authority." Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007). If it is shown that the official was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." Id. at 1136-37.

For the plaintiff to overcome qualified immunity, he must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (citing Wilson v. Layne, 526

AO 72A
(Rev. 8/82)

U.S. 603, 609 (1999)); see also Davis v. Self, 547 F. App'x 927, 933 (11th Cir. 2013) ("Meanwhile, as the Supreme Court recently reiterated, '[q]ualified immunity . . . protects all but the plainly incompetent or those who knowingly violate the law.'" (alterations in original) (quoting Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012))). "If the plaintiff prevails on both prongs of this test, then the defendant is unable to obtain summary judgment on qualified immunity grounds." Holloman ex rel. Holloman, 370 F.3d at 1264. A court may decide, in its discretion, which of the two prongs to analyze first. Gilmore v. Hodges, 738 F.3d 266, 272-73 (11th Cir. 2013) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

## A. Discretionary Capacity

An officer was acting in the scope of his discretionary authority if he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman, 370 F.3d at 1265-66 (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n.17 (11th Cir. 1994)). This test requires analyzing the "general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Id. at 1266.

9

For the first prong, "the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." Id. (emphasis omitted). For the second prong, the Court must determine whether the officer was "executing the job-related function—that is, pursuing his job-related goals—in an authorized manner." Id.

> Each government employee is given only a certain "arsenal" of powers with which to accomplish [his] goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

Id. at 1267. Qualified immunity does not protect one who pursues a job-related goal through means "fall[ing] outside the range of discretion that comes with an employee's job." Id.

In the case at bar, it appears relatively undisputed that Smith was acting in a discretionary capacity when the alleged constitutional violations occurred. The investigation into a report of suspicious, and potentially criminal, activity falls squarely within the realm of a police officer's legitimate job-related functions. Moreover, Plaintiff does not contend—and nothing in the record suggests—that Smith used unauthorized means to fulfill this job-related goal. Rather, because it is undisputed that Smith was acting within his duties as a police

officer of the Brunswick Police Department when the alleged constitutional violations took place, Smith carries his burden of showing that he was acting within the scope of his discretionary authority. The burden thus shifts to Plaintiff to demonstrate that qualified immunity does not protect Smith's conduct while acting in this capacity.

**B. Violation of a Constitutional Right**

1. Fourth Amendment

The Magistrate Judge's Report and Recommendation accurately sets forth the prevailing law under the Fourth Amendment. See Dkt. No. 39, pp. 7-8.[2] For the reasons stated in the Report and Recommendation, the undisputed facts relating to Smith's initial field contact interview do not give rise to any Fourth Amendment violation. Id. at p. 8. Plaintiff's Objection regarding Smith's lack of suspicion as to Plaintiff's commission of a crime, see dkt. no. 40, p. 2, does not change this result. See Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty., 542 U.S. 177, 178 (2004) ("[A]n investigating officer is free to ask a person for identification without implicating the [Fourth]

---

[2] The Court adds that while the Fourth Amendment is applicable only to the federal government, it is binding on state actors by virtue of the Fourteenth Amendment Due Process Clause. See Mapp v. Ohio, 367 U.S. 643, 650 (1961) (citing Wolf v. Colo., 338 U.S. 25, 28 (1949), overruled on other grounds by Mapp, 367 U.S. at 643). While the Court, for ease of exposition, refers only to the Fourth Amendment in discussing Plaintiff's unlawful-seizure claims in the Report and Recommendation and this Order, these references should be interpreted to mean unlawful seizures under the Fourth and Fourteenth Amendments.

11

Amendment." (citing INS v. Delgado, 466 U.S. 210, 216 (1984)));
United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir.
1989) (distinguishing noncoercive interactions with police,
which do not trigger Fourth Amendment scrutiny, from the more
intrusive investigative detentions that must be grounded in
reasonable suspicion under the Fourth Amendment); see, e.g.,
United States v. Mitchell, 407 F. App'x 407, 409-10 (11th Cir.
2011) (officer's initial encounter with the plaintiff for the
purpose of conducting a field interview did not implicate the
Fourth Amendment).

However, to the extent that the field contact interview
progressed into an investigative detention, it did constitute a
seizure under the Fourth Amendment and was supported by
reasonable suspicion.³ Reasonable suspicion refers to a

---

³ An investigative detention, or investigatory stop, "involves reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." Mitchell, 407 F. App'x at 409 (citing United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006)). An investigatory stop amounts to a "seizure" under the Fourth Amendment, because—as described in the Report and Recommendation, dkt. no. 39, pp. 7-8—a "seizure" occurs where, "by means of physical force or a show of authority, a person's freedom of movement is restrained." Id. (quoting Perez, 443 F.3d at 777). In determining whether a seizure has occurred, relevant factors include, among others, "whether the police officer blocked the individual's path, the display of weapons, whether identification is retained, the individual's age and intelligence, the number of police officers present, any physical touching of the suspect, and the language and tone of voice of the police." Id. (citing Perez, 443 F.3d at 778). Here, the undisputed record facts provide ample support for the conclusion that Smith's field contact interview with Plaintiff, while

AO 72A
(Rev. 8/82)

"reasonable, articulable suspicion that the person has committed or is about to commit a crime." Mitchell, 407 F. App'x at 409 (citing Perez, 443 F.3d at 777). Reasonable suspicion is "more than a hunch; it requires that the totality of the circumstances create, at least, some minimal level of objective justification for the belief that the person engaged in unlawful conduct." United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995) (citing United States v. Diaz-Lizaraza, 981 F.2d 1216, 1221 (11th Cir. 1993)). A court, therefore, must consider whether the totality of the circumstances—that is, "the facts available to the officer at the moment of the seizure"—would lead "a man of reasonable caution" to believe that an investigatory stop was appropriate. Id. (citing Terry v. Ohio, 392 U.S. 1, 22 (1968)).

In this case, Smith came across Plaintiff on Homer Wilson Way just after receiving a report of suspicious and possibly criminal activity in that location. See Dkt. No. 24-1, ¶¶ 2, 4-6; Dkt. No. 32-3, ¶¶ 2, 4-6; see also United States v. Gordon,

---

consensual at the outset, developed into an investigatory stop during their encounter: (1) Smith took possession of Plaintiff's identification card, dkt. no. 24-3, ex. A, p. 2; (2) Lawson and another officer came to the scene and joined Smith in the encounter, id.; (3) Lawson handcuffed Plaintiff for a brief period of time, id.; and (4) Smith advised Plaintiff that "he was going to check on his status, and if everything was all right he could leave," dkt. no. 24-1, ¶ 17; dkt. no. 32-3, ¶ 17. Under these circumstances, a reasonable person would not feel free to walk away from the officers without consequence.

13

231 F.3d 750, 755-56 (11th Cir. 2000) (presence in an area of expected criminal activity is a relevant factor in determining whether reasonable suspicion exists (citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000))). When Smith requested that Plaintiff show his identification card, Plaintiff refused and instead responded with questions of his own. See Dkt. No. 24-1, ¶¶ 12, 14, 17; Dkt. No. 32-3, ¶¶ 12, 14, 17; see also Wardlow, 528 U.S. at 124 ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (citing United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); Florida v. Rodriguez, 469 U.S. 1, 6 (1984); and United States v. Sokolow, 490 U.S. 1, 8-9 (1989))).

Furthermore, while the parties disagree as to whether Plaintiff took a step toward Smith at any time, see dkt. no. 24-1, ¶ 17 n.1; dkt. no. 25, 30:6-11, the undisputed facts nevertheless illustrate his combative and threatening behavior: Plaintiff "protested" throughout the conversation, see dkt. no. 24-1, ¶ 8; dkt. no. 32-3, ¶ 8; he "challeng[ed] what [Smith] was doing and why," dkt. no. 25, 26:19-22; and he "was so mad" at Smith for confronting him, id. at 18:4-7. See Mitchell, 407 F. App'x at 410 ("An officer may conduct an investigative stop if a reasonably prudent person in the same circumstances would be warranted in the belief that his safety was in danger." (citing United States v. White, 593 F.3d 1199, 1202-03 (11th Cir.

2010))). Under the totality of the circumstances, it was reasonable to believe that Plaintiff was involved in criminal activity and posed a threat to the officers' safety, such that the investigatory stop was consistent with the Fourth Amendment.

As discussed in the Court's earlier Order, Plaintiff failed to sufficiently plead a claim against Smith under a theory of supervisor liability, see dkt. no. 41, pp. 3-6; however, the Court notes that even if Plaintiff could pursue such a claim in this case, Plaintiff does not establish any Fourth Amendment violation on the part of another officer for which Smith could be held liable as a supervisor. Liability under Section 1983 must be based on something more than a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervising official may be liable only "when [he] personally participates in the alleged constitutional violation or when there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." Braddy, 133 F.3d at 802 (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). A plaintiff asserting a Section 1983 claim against a supervisory defendant must prove one of the following:

> (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in

15

> deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citing West v. Tillman, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

As Plaintiff points out in his Objections, see dkt. no. 40, p. 2, Smith held the position of Shift Commander on the date in question, dkt. no. 32, ex. A, ¶ 1. Although the evidence does not delineate the scope of Smith's authority as Shift Commander, the Court assumes, for the purposes of this discussion, that this was a supervisory role, such that Smith could be liable for failing to prevent any unlawful actions taken by Lawson or the other officer. Even assuming this fact, however, the record evidence does not suggest that these officers engaged in any conduct that violated the Fourth Amendment, as they merely participated in an investigatory stop that was grounded in reasonable suspicion, as discussed supra, and Lawson's decision to handcuff Plaintiff was appropriate in light of Plaintiff's aggressive manner. See Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1305-06 (11th Cir. 2006) ("[D]uring an investigatory stop, an officer can still handcuff a detainee when the officer reasonably believes that the detainee presents a potential threat to safety." (citing Hastamorir, 881 F.2d at 1557;

AO 72A
(Rev. 8/82)

Blackman, 66 F.3d at 1576-77; and United States v. Kapperman, 764 F.2d 786, 790-91 & n.4 (11th Cir. 1985))).

### 2. Fifth Amendment

Plaintiff cannot sustain any Section 1983 claim against Smith based on an alleged Fifth Amendment due process violation. It is the Due Process Clause of the Fourteenth Amendment, rather than the Fifth Amendment, that explicitly applies to the states. See U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."). More importantly, it is well settled that allegations of false arrest give rise to claims for unlawful search and seizure under the Fourth and Fourteenth Amendments, not substantive due process claims under the Fifth or Fourteenth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

### C. Conclusion

As Plaintiff does not put forth sufficient evidence of a violation of a constitutional right—much less one that was clearly established at the time of his interaction with the officers—Plaintiff cannot overcome the application of qualified

immunity to defeat summary judgment. Smith is thus entitled to judgment in his favor on Plaintiff's claims against him.

## II. Plaintiff's Claims Against the City of Brunswick

Insofar as Plaintiff's claims against the City of Brunswick are premised upon the allegedly unconstitutional nature of the Brunswick Police Department's Field Interview and Contact Card policy, those claims fail for the reasons discussed in the Magistrate Judge's Report and Recommendation, see dkt. no. 39, p. 11, as well as those set forth herein with regard to the constitutional claims against Smith, see supra subpart I.B. Plaintiff's Objection that the complained of events occurred not as an "isolated incident" but on four separate occasions, dkt. no. 40, p. 3, is unpersuasive. Plaintiff does not offer any evidence of the other instances in which he allegedly was subjected to field contact interviews—other than the one occasion when an officer approached him regarding his bathing suit, see dkt. no. 25, 35:8-36:1—and, even if proven, field contact interviews similar to that conducted by Smith would not support a finding that the municipality's policy was unconstitutional, see supra subpart I.B.

Plaintiff also has no viable claim against the City of Brunswick relating to Lawson's handcuffing during the investigatory stop. Plaintiff makes no allegation or argument that the Brunswick Police Department has a custom or practice of

AO 72A
(Rev. 8/82)

permitting the use of handcuffs in contexts involving anything less than a reasonable suspicion of criminal activity or danger to safety. To the contrary, Plaintiff alleges that he was not placed in handcuffs in any of his other purported encounters with the police, dkt. no. 1, ex. A, ¶ 3, and his deposition testimony confirms that he was not handcuffed during the bathing suit incident, dkt. no. 25, 35:8-36:1.

Thus, Plaintiff puts forth no evidence of any unconstitutional policy or practice for which a reasonable juror could find the City of Brunswick liable as a supervisor of the police officers. Summary judgment in favor of the City of Brunswick is thus warranted for these reasons.

## CONCLUSION

Based on the foregoing, the Court's Order dated March 29, 2016 (dkt. no. 41), **REMAINS** the Order of the Court and is **SUPPLEMENTED** as set forth herein. Additionally, the Magistrate Judge's Report and Recommendation (dkt. no. 39), which the Court previously adopted, is **MODIFIED** consistent with this opinion.

**SO ORDERED**, this 31ST day of March, 2016.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA